Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIA COLEMAN, | Case No: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| NUANCE COMMUNICATIONS, INC., LLOYD CARNEY, MARK BENJAMIN, DANIEL BRENNAN, THOMAS EBLING, BOB FINOCCHIO, LAURA KAISER, MICHAL KATZ, MARK LARET, and SANJAY VASWANI, | |
| Defendants. | |

### COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Tia Coleman ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

### NATURE OF THE ACTION

1.      This is an action against Nuance Communications, Inc. ("Nuance" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Nuance by Microsoft Corporation ("Microsoft") and Big Sky Merger Sub Inc., a wholly owned subsidiary of Microsoft.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York City.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of Nuance common stock.

7.      Defendant Nuance provides conversational and cognitive artificial intelligence innovations that bring intelligence to everyday work and life. The Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "NUAN."

8.      Defendant Lloyd Carney ("Carney") is Chairman of the Board of the Company.

9.      Defendant Mark Benjamin ("Benjamin") is Chief Executive Officer and a director of the Company.

10.     Defendant Daniel Brennan ("Brennan") is a director of the Company.

11.     Defendant Thomas Ebling ("Ebling") is a director of the Company.

12.     Defendant Bob Finocchio ("Finocchio") is a director of the Company.

13.     Defendant Laura Kaiser ("Kaiser") is a director of the Company.

14.     Defendant Michal Katz ("Katz") is a director of the Company.

15.      Defendant Mark Laret ("Laret") is a director of the Company.

16.     Defendant Sanjay Vaswani ("Vaswani") is a director of the Company.

17.     Defendants Carney, Benjamin, Brennan, Ebling, Finocchio, Kaiser, Katz, Laret, and Vaswani are collectively referred to herein as the "Individual Defendants."

18.     Defendants Nuance and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.  The Proposed Transaction

19.     On April 12, 2021, Nuance and Microsoft announced that they had entered into a definitive agreement under which Microsoft would acquire Nuance for $56.00 per share in an all-cash transaction. The press release announcing the Proposed Transaction states, in pertinent part:

**Microsoft accelerates industry cloud strategy for healthcare with the acquisition of Nuance**

Acquisition will combine solutions and expertise to deliver new cloud and AI capabilities across healthcare and other industries

NEWS PROVIDED BY
**Microsoft Corporation**
Apr 12, 2021, 08:31 ET

REDMOND, Wash., and BURLINGTON, Mass., April 12, 2021 /PRNewswire/ - - Microsoft Corp (Nasdaq: MSFT) and Nuance Communications, Inc. (Nasdaq: NUAN) today announced they have entered into a definitive agreement under which Microsoft will acquire Nuance for $56.00 per share, implying a 23% premium to the closing price of Nuance on Friday, April 9, in an all-cash transaction valued at $19.7 billion, inclusive of Nuance's net debt. Nuance is a trusted cloud and AI software leader representing decades of accumulated healthcare and enterprise AI experience. Mark Benjamin will remain CEO of Nuance, reporting to Scott Guthrie, executive vice president of Cloud & AI at Microsoft. The transaction is intended to close this calendar year.

Microsoft has accelerated its efforts to provide industry-specific cloud offerings to support customers and partners as they respond to disruption and new opportunities. These efforts include the Microsoft Cloud for Healthcare, introduced in 2020, which aims to address the comprehensive needs of the rapidly transforming and growing healthcare industry. Today's acquisition announcement represents the latest step in Microsoft's industry-specific cloud strategy.

Nuance is a pioneer and a leading provider of conversational AI and cloud-based ambient clinical intelligence for healthcare providers. Nuance's products include the Dragon Ambient eXperience, Dragon Medical One and PowerScribe One for radiology reporting, all leading clinical speech recognition SaaS offerings built on Microsoft Azure. Nuance's solutions work seamlessly with core healthcare systems, including longstanding relationships with Electronic Health Records (EHRs), to alleviate the burden of clinical documentation and empower providers to deliver better patient experiences. Nuance solutions are currently used by more than 55% of physicians and 75% of radiologists in the U.S., and used in 77% of U.S. hospitals. Nuance's Healthcare Cloud revenue experienced 37% year-over-year growth in Nuance's fiscal year 2020 (ended September 2020).

Microsoft's acquisition of Nuance builds upon the successful existing partnership between the companies that was announced in 2019. By augmenting the Microsoft Cloud for Healthcare with Nuance's solutions, as well as the benefit of Nuance's expertise and relationships with EHR systems providers, Microsoft will be better able to empower healthcare providers through the power of ambient clinical intelligence and other Microsoft cloud services. The acquisition will double

Microsoft's total addressable market (TAM) in the healthcare provider space, bringing the company's TAM in healthcare to nearly $500 billion. Nuance and Microsoft will deepen their existing commitments to the extended partner ecosystem, as well as the highest standards of data privacy, security and compliance.

"Nuance provides the AI layer at the healthcare point of delivery and is a pioneer in the real-world application of enterprise AI," said Satya Nadella, CEO, Microsoft. "AI is technology's most important priority, and healthcare is its most urgent application. Together, with our partner ecosystem, we will put advanced AI solutions into the hands of professionals everywhere to drive better decision-making and create more meaningful connections, as we accelerate growth of Microsoft Cloud for Healthcare and Nuance."

Beyond healthcare, Nuance provides AI expertise and customer engagement solutions across Interactive Voice Response (IVR), virtual assistants, and digital and biometric solutions to companies around the world across all industries. This expertise will come together with the breadth and depth of Microsoft's cloud, including Azure, Teams, and Dynamics 365, to deliver next-generation customer engagement and security solutions.

"Over the past three years, Nuance has streamlined its portfolio to focus on the healthcare and enterprise AI segments, where there has been accelerated demand for advanced conversational AI and ambient solutions," said Mark Benjamin, CEO, Nuance. "To seize this opportunity, we need the right platform to bring focus and global scale to our customers and partners to enable more personal, affordable and effective connections to people and care. The path forward is clearly with Microsoft — who brings intelligent cloud-based services at scale and who shares our passion for the ways technology can make a difference. At the same time, this combination offers a critical opportunity to deliver meaningful and certain value to our shareholders who have driven and supported us on this journey."

The transaction has been unanimously approved by the Boards of Directors of both Nuance and Microsoft. The deal is intended to close by the end of this calendar year and is subject to approval by Nuance's shareholders, the satisfaction of certain regulatory approvals, and other customary closing conditions.

Upon closing, Microsoft expects Nuance's financials to be reported as part of Microsoft's Intelligent Cloud segment. Microsoft expects the acquisition to be minimally dilutive (less than 1 percent) in fiscal year 2022 and to be accretive in fiscal year 2023 to non-GAAP earnings per share, based on the expected close timeframe. Non-GAAP excludes expected impact of purchase accounting adjustments, as well as integration and transaction-related expenses. The acquisition will not impact the completion of its existing share repurchase authorization.

Nadella, Benjamin, Guthrie and Microsoft Chief Financial Officer Amy Hood will host a webcast for investors and media on April 12, 2021, at 8 a.m. Pacific Time/11 a.m. Eastern Time regarding this transaction. The presentation is available via webcast at https://aka.ms/MS-Investor-Call or to international callers at +1 (201) 689-8023 (no password required), or to U.S. callers at (877) 407-0666 (no password required), at that time.

Goldman Sachs & Co. LLC is acting as exclusive financial advisor to Microsoft, while Simpson Thacher & Bartlett LLP is acting as its legal advisor. Evercore is acting as exclusive financial advisor to Nuance, while Paul, Weiss, Rifkind, Wharton & Garrison LLP is acting as its legal advisor.

**About Microsoft**

Microsoft (Nasdaq "MSFT" @microsoft) enables digital transformation for the era of an intelligent cloud and an intelligent edge. Its mission is to empower every person and every organization on the planet to achieve more.

**About Nuance Communications, Inc**.

Nuance Communications (NASDAQ: NUAN) is a technology pioneer with market leadership in conversational AI and ambient intelligence. A full-service partner trusted by 77 percent of U.S. hospitals and 85 percent of the Fortune 100 companies worldwide, Nuance creates intuitive solutions that amplify people's ability to help others.

20.     On May 5, 2021, the Company filed a Schedule 14A Preliminary Proxy Statement under Section 14(a) of the Exchange Act (the "Proxy Statement") with the SEC in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

21.     The Proxy Statement, which recommends that Nuance shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Nuance's financial projections; (ii) the financial analyses performed by Nuance's financial advisor, Evercore Group L.L.C. ("Evercore"), in connection with its fairness opinion; and (iii) potential conflicts of interest involving Evercore.

22.     The omission of the material information (referenced below) renders the following

sections of the Proxy Statement false and misleading, among others: (i) Recommendation of Our Board of Directors and Reasons for the Merger; (ii) Opinion of Nuance's Financial Advisor; and (iii) Financial Forecasts.

23.     Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Nuance shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1.     Material Omissions Concerning Nuance's Financial Projections

24.     The Proxy Statement omits material information concerning Nuance's financial projections.

25.     With respect to the Nuance Forecasts, the Proxy Statement fails to disclose: (1) all line items underlying (i) Revenue, (ii) Adjusted EBITDA, and (iii) Unlevered Free Cash Flow; (2) Nuance's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

26.     The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

27.     When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their

corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

28.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2.     Material Omissions Concerning Evercore's Analyses

29.     In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Evercore.

30.     The Proxy Statement fails to disclose the following concerning Evercore's "*Selected Public Company Trading Analysis*": (1) the individual multiples and financial metrics of each company Evercore observed in its analyses; (2) the Company's levered, after-tax free cash flows; (3) Nuance's net debt as of December 31, 2020; and (4) the number of fully diluted shares of Nuance common stock.

31.     The Proxy Statement fails to disclose the following concerning Evercore's "*Discounted Cash Flow Analysis*": (1) all line items underlying the standalone unlevered free cash

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited May 12, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

flow that Nuance was forecasted to generate during the second half of Nuance's fiscal year 2021 and Nuance's fiscal years 2022 through 2025; (2) the terminal values for Nuance; (3) the individual inputs and assumptions underlying the (i) perpetuity growth rates of 4.0% to 5.0%, and (ii) discount rates ranging from 8.0% to 9.0%; (4) Nuance's estimated net debt as of December 31, 2020; and (5) the number of fully diluted shares of Nuance common stock.

32.     The Proxy Statement fails to disclose the following concerning Evercore's "*Sum-of-the-Parts Discounted Cash Flow Analysis*": (1) all line items underlying the unlevered free cash flow that Nuance was forecasted to generate during the second half of Nuance's fiscal year 2021 and Nuance's fiscal years 2022 through 2025; (2) terminal values for Nuance; (3) the individual inputs and assumptions underlying the (i) perpetuity growth rates of 3.5% to 4.5%, (ii) discount rates ranging from 8.0% to 9.0%, and from 17.5% to 22.5%, and (iii) revenue multiple of 15.0x – 20.0x; (4) Nuance's estimated net debt as of December 31, 2020; and (5) the number of fully diluted shares of Nuance common stock.

33.     With respect to Evercore's "*Equity Research Analyst Price Targets*," the Proxy Statement fails to disclose: (1) the individual price targets observed by Evercore in its analyses; and (2) the sources thereof.

34.     The Proxy Statement fails to disclose the following concerning Evercore's "*Selected HC & ENT Transactions Analysis*" and "*Selected Vertical Software Transactions Analysis*": (1) each transaction utilized by Evercore in its analyses; and (2) the individual multiples and financial metrics of each transaction Evercore observed in its analyses.

35.     With respect to Evercore's "*Premiums Paid Analysis*," the Proxy Statement fails to disclose each transaction and the individual premiums paid therein.

36.     The valuation methods, underlying assumptions, and key inputs used by

Evercore in rendering its purported fairness opinion must be fairly disclosed to Nuance shareholders. The description of Evercore's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Nuance shareholders are unable to fully understand Evercore's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Evercore

37.     The Proxy Statement omits material information concerning potential conflicts of interest involving Evercore.

38.     The Proxy Statement fails to disclose the timing and nature of the past services Evercore and/or its affiliates provided Nuance and/or its affiliates.

39.     Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

40.     The omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

41.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

42.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

43.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

44.     The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

45.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

46.     Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

47.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

48.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

49.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

50.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements

or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

51.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

52.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: May 12, 2021                                   Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh_____
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
            zhalper@halpersadeh.com

*Counsel for Plaintiff*